JOURNAL ENTRY AND OPINION
Defendant Ricardo Vega appeals from his conviction for attempted rape. For the reasons set forth below, we affirm.
On December 7, 1993, defendant was indicted for one count of rape of a child under the age of thirteen and one count of attempted rape of a child under the age of thirteen. Defendant pleaded not guilty. In May 1994, defendant failed to appear for a pretrial and a capias was issued for him. Defendant was arrested and brought back to the jurisdiction in June 1999.
The matter proceeded to trial on January 10, 2000.[1] The victim testified that she was born in 1986. When she was in first grade, she went to day care at defendant's home where defendant's wife watched her before and after school. After the school year ended, Mrs. Vega continued to watch her and other children. The victim stated that her mother brought her to the Vega's home each morning between 7:00 a.m. and 7:30 a.m. She usually went to the basement where she napped, played with toys, and watched television. Defendant, whom Megan knew as Tony dressed in the basement and wore a work uniform which consisted of a light blue shirt with a name patch and dark blue pants.
The girl testified that while she and her mother were riding the bus home from defendant's house, she told her mother that they needed to talk and that her mother would not like what she was about to say. When they got off the bus, the girl told her mother that Tony had touched her and tried to put his pee pee in her mouth and that a few weeks earlier he put it in her butt.
With regard to the earlier incident, the victim testified that defendant was getting ready for work and he pulled her shorts down. He made her touch his penis and he put it into her butt. A whitish substance came out.
With regard to the later incident, the victim testified that Mrs. Vega and some of the children were napping in the bed in the basement and defendant took his pants off and touched his penis to her mouth. She had her mouth closed. Defendant stopped as Mrs. Vega began to stir. Defendant told the girl not to tell or she would get into trouble.
The girl recalled that her mother then took her to a counselor and to a doctor.
Andrea Begany, the girl's mother, testified that in 1992 and 1993, Susana Vega watched her. They took a bus to defendant's house and took a bus home. Ms. Begany further testified that the girl was very petite for her age and that defendant was husky. On August 11, 1993, while they were riding the bus home in the evening, she and her daughter had a conversation. Thereafter, Begany called the Rape Crisis Center then took her to Fairview General Hospital. The Cuyahoga County Department of Children and Family Services later contacted Begany and the girl was examined by another doctor from Rainbow Babies and Children's Hospital and interviewed by a counselor from the Rape Crisis Center.
On cross-examination, Ms. Begany stated that earlier in the year, children at school were hitting each other in their private areas and either she or a teacher warned her daughter not to play such games. She also acknowledged that the doctor who examined her daughter at Fairview indicated that there had been penetration but it was "not recent" but it was undetermined when the abuse occurred.
Sharon Babbitt, a social worker with the Cuyahoga County Department of Children and Family Services testified that she received a referral in this matter from Fairview General Hospital on August 11, 1993. Thereafter, on September 7, 1993, she interviewed the victim and prepared a report. She testified that the purpose of the interview is to determine whether abuse occurred and to obtain treatment for the child.
Babbitt stated that the girl told her that defendant put his penis in her mouth and tried to pee in her mouth. The girl also stated that two weeks earlier, defendant had her touch his penis and also put his penis in her butt. Babbitt subsequently spoke to the county supervisor of day care facilities regarding the day care operated by defendant's wife.
On cross-examination, Babbitt stated that county records indicate that the day care lost its active status on August 6, 1993, and that this could have been the result of defendant's failure to have a working telephone. In addition, she admitted that the girl did not mention during the interview that others were present in the bed during the second incident.
Dr. Amy Richardson testified that in 1993 she worked in the Child Protection Program at Rainbow Babies' and Children's Hospital. Richardson examined Megan on October 12, 1993 and, based upon her findings, she determined to a reasonable degree of medical certainty that the girl had undergone penetrating genital trauma.
F.B.I. Agent H. Douglas Williams testified that in 1993 he was assigned to the fugitive task force. After a capias was issued for defendant for failure to appear in this matter, the task force began to search for him in the Cleveland area. Williams subsequently obtained information that defendant was in El Salvador and Williams informed the Immigration and Naturalization Service that there was a warrant for defendant's arrest. On June 5, 1999, defendant was arrested at the Mexican border. Defendant had a bus ticket to Cleveland but there was no evidence that he had made any attempt to turn himself over to authorities.
Following the presentation of the state's case, the trial court dismissed the count of rape. The court did not state reasons in support of this ruling.
Defendant elected to present evidence. His former attorney Edward Wade testified that attorney Jaimie Serrat represented defendant initially then referred the matter to Wade. Due to the nature of the charges and Wade's insistence on providing an interpreter in order to assure that defendant fully understood the proceedings, the anticipated fee was between ten and twenty-five thousand dollars. Defendant was unable to pay so Wade did not undertake an investigation and eventually told defendant that he could not represent him. A trial date was scheduled at this time.
Defendant's wife Susana testified through an interpreter that in 1993 she provided day care at her home and watched the girl and seven to ten other children. She admitted that there was a bed in the basement but the children slept on cots provided by the county and that they played in the basement when she was present.
Vega also stated that from July 28, 1993, until August 10, 1993, she and her family were on vacation. A neighbor watched some of the children. When Vega returned, she was informed that the county no longer authorized her to provide day care and she stated that she no longer watched children after returning from vacation. She further stated that in August 1993, the girl went to Chicago to visit her father. She denied that any improper conduct could have occurred at her home because the girl was always with her.
On cross-examination, Vega admitted that when her family returned from vacation, they received a letter from the county informing her that she could no longer provide day care because of the allegations of this incident. She also admitted that her husband did change his clothes in the basement. She knew that the F.B.I. was looking for defendant and she had contact with defendant but did not inform the F.B.I. of his whereabouts. She believed that he did not want to return to this area.
Evelyn Sandiga, defendant's niece, testified that Susana Vega watched her child and that after the family took a vacation in July of 1993, Mrs. Vega called and informed her that she could no longer provide day care. She admitted that on some occasions, the other children whom Susana watched napped there.
Elizabeth Palma, who is married to Susana Vega's brother, testified that the Vega family helped her family move to Cleveland from Los Angeles on August 10, 1993 and also helped her unpack and put furniture in place on August 11, 1993. Blanca Barillas testified that defendant helped the Palmas family move into their Cleveland home from August 10, 1993 to August 13, 1993.
Anna Colocho testified that Susana Vega watched her son in 1993. She stated that the Vegas took a vacation in July and Colocho then found a new babysitter because she moved.
Andrea Begany provided rebuttal testimony for the state and indicated that her daughter did not go to Chicago to visit her father until after the girl reported the abuse to her mother.
Defendant was subsequently convicted of attempted rape. The trial court sentenced defendant to a term of four to fifteen years imprisonment. Defendant now appeals and assigns a single error for our review.
Defendant's assignment of error states:
 APPELLANT'S CONVICTION FOR ATTEMPTED RAPE MUST BE REVERSED BECAUSE IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Within this assignment of error, defendant asserts that the jury lost its way in convicting him of attempted rape because, he claims, the girl's testimony was unbelievable and absurd.
In determining whether a trial court's decision is against the manifest weight of the evidence, the following factors are guidelines to be taken into account by a reviewing court: (1) The reviewing court is not required to accept as true the incredible; (2) whether the evidence is uncontradicted; (3) whether a witness was impeached; (4) what was not proved; (5) the certainty of the evidence; (6) the reliability of the evidence; (7) whether a witness' testimony is self-serving; (8) whether the evidence is vague, uncertain, conflicting or fragmentary. See State v. Mattison (1985), 23 Ohio App.3d 10, 11.
 Additionally, the court in State v. Thompkins (1997), 78 Ohio St.3d 380
stated:
 Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.
 It indicated clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.
In this instance, the girl offered graphic, explicit evidence of attempted rape which was unexpected in light of her age. Her account did not vary despite the number of years from her initial report to the eventual trial. Medical evidence clearly substantiated her claims. The state's evidence was compelling.
Against this, defendant fled the jurisdiction for years after the prosecution of this matter was commenced which the jury could consider as evidence of consciousness of guilt. The evidence presented by defendant regarding his absence from the jurisdiction did not negate a consciousness of guilt and did not demonstrate that he was attempting to turn himself over to the police. Further, defendant's wife was impeached as to when and why she was no longer permitted to provide day care. County records did not substantiate defendant's claims that Susana Vega was terminated as a day care provider for telephone problems as the termination letter prepared by the county indicates that defendant was the subject of a sexual abuse investigation. The jury did not lose its way in convicting defendant of the offense and the conviction is not against the manifest weight of the evidence.
The assignment of error is overruled.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., AND MICHAEL J. CORRIGAN, J., CONCUR.
[1] Defendant expressed difficulty understanding English and the trial court provided him with an interpreter for this matter.